IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO.5:09-CV-379-FL

| | |
|---|---|
| SHARON A. MERCER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | ORDER |
| v. ) | |
| ) | |
| NORTH CAROLINA DEPARTMENT OF ) | |
| TRANSPORTATION and NORTH ) | |
| CAROLINA DIVISION OF MOTOR ) | |
| VEHICLES LICENSE & THEFT ) | |
| BUREAU, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on defendant's motion for summary judgment pursuant to rule 56 of the Federal Rules of Civil Procedure (DE # 24). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr., entered a memorandum and recommendation ("M&R") wherein he recommends that the court grant in part and deny in part defendant's motion. Plaintiff and defendant timely filed objections to the M&R. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge, and grants in part and denies in part defendant's motion for summary judgment.

## BACKGROUND

The undisputed facts as described in detail in the M&R are as follows.

In 2001, Plaintiff was hired by the DMV for the position of Law Enforcement Officer I. Decl. of Sharon Mercer ("Pl.'s Decl.") ¶ 3 [DE-30]. In 2004, Plaintiff was promoted to the position of Inspector at the DMV office in Rocky Mount, North Carolina, and remains employed in this position. Pl.'s Decl. ¶ 3; Bozard Dep. 28:1-3.

Between September 2006 and October 2008, Plaintiff applied unsuccessfully for a "number of promotions" within the DMV and subsequently filed grievances with the DMV's Department of Human Resources and with the OHA. Pl.'s Decl. ¶¶ 4-5 [DE-30]; Pl.'s Ex. 2, Def.'s Resp. Interrog. ¶ 1 [DE-29.2]. Between 24 June 2008 and 4 November 2008, Plaintiff submitted applications for five positions within the DMV and was interviewed for two of these positions. Pl.'s Ex. 2, Def.'s Resp. Interrog. ¶ 1 [DE-29.2]. Three of the positions are presently occupied by an Hispanic male, a white male and a black male. Pl.'s Ex. 2, Def.'s Resp. Interrog. ¶ 1 [DE-29.2]. Interviews were never conducted for the remaining two positions, which remain vacant. Pl.'s Ex. 2, Def.'s Resp. Interrog. ¶ 1 [DE-29.2].

Subsequently, Plaintiff filed grievances with the DMV's Department of Human Resources[1] and on 30 August 2008, filed a Contested Case with the OHA alleging gender and race discrimination. Compl. ¶ VIII; Pl.'s Decl.¶ 5 [DE-30]; Pl.'s Mem. Def.'s Mot. Summ. J. ("Pl.'s Resp.") at 1 [DE-29]; Def.'s Ex. B, Pl.'s Resp. Interrog. ¶ 9 [DE-26.4].

### A. Disciplinary Action Against Plaintiff

On 2 December 2008, sometime after 5:00 p.m., Plaintiff left her state issued firearm in the women's restroom of the Rocky Mount DMV office and exited the building for the day. Pl.'s Decl.¶ 6 [DE-30]. Plaintiff realized soon thereafter that she was missing her weapon and returned to the building to retrieve it. Pl.'s Decl. ¶ 6 [DE-30]. However, in the interim, a member of the building cleaning staff discovered the weapon and contacted the DMV headquarters in Raleigh. Bozard Dep. 33:20, 35:4-5, 55:14-17 [DE-29.2]; Def.'s Ex. A, Bozard Ltr. [DE-26.3]. The weapon was placed temporarily in the possession of a Senior Driver License Examiner. Def.'s Ex. A, Bozard Ltr. [DE - 26.3]; Bozard Dep. 58:9-13 [DE-29.2]. Subsequently, Brian Bozard ("Bozard"), a white male and then Director of the Bureau,[2] contacted Otto Hayes ("Hayes"), a black male and Assistant Supervisor of the Bureau and Plaintiff's immediate supervisor, and requested Hayes retrieve the weapon. Bozard Dep. 9:19-20, 28:11-12, 37:19-20,38:3-5; Pl.'s Ex. 2, Def.'s Resp. Interrog. ¶ 1D [DE-29.2]. When Hayes arrived at the Rocky Mount DMV office, he learned that Plaintiff had retrieved her weapon from the Senior Driver License Examiner and advised Bozard accordingly. Pl.'s Ex. 3, Hayes Ltr. [DE-29.2 at 151]; Def.'s Ex. A, Bozard Ltr. [DE-26.3].

On 15 December 2008, Plaintiff received a letter from George Lockamy ("Lockamy"), a white male and Deputy Director of the Bureau, notifying her of the recommendation that she be dismissed for "grossly inefficient job performance" which is defined pursuant to the Bureau's Policy and Procedure Manual as job

---

[1] Plaintiff does not provide the dates on which the grievances were filed. She only states that they were filed following her denial for promotions sought between September 2006 and October 2008. (Pl.'s Decl. ¶¶ 4-5.)

[2] As noted in the M&R, Bozard retired from the DMV on 1 May 2009. (Bozard Dep. 9:24-25.)

2

performance which results in "the creation of the potential for death or serious bodily injury to one or more members of the License or Theft Bureau or citizens or to one or more persons over whom the offending member has responsibility."[3] Pl.'s Ex. 4, Lockamy Ltr. [DE-29.2 at 148]; Pl.'s Ex. 2, Def.'s Resp. Interrog. ¶ 1A [DE-29.2]. On 18 December 2008, a predisciplinary conference was held in the DMV's Raleigh headquarters where Plaintiff was afforded the opportunity to respond to the dismissal recommendation. Pl.'s Ex. 4, Lockamy Ltr. [DE-29.2 at 148]. On 19 December 2008, Bozard notified Plaintiff in writing of his decision to suspend her without pay[4] for three consecutive work days due to grossly inefficient performance.[5] Def.'s Ex. A, Bozard Ltr. [DE-26.3]; Bozard Dep. 58: 18-23. As a result of the written warning, Plaintiff was ineligible for promotion for eighteen months. Pl.'s Decl. ¶ 7; Bozard Dep. 60:2-3, 10-11.

**B. Disciplinary Action Against Other DMV Employees**
1. Glenn Boykin

On 18 July 2005, Glenn Boykin ("Boykin"), a white male and a DMV Inspector, received a written warning for failure to secure his firearm in a manner that prevents accessibility to children or other persons. Pl.'s Ex. 6, Boykin Ltr. [DE-29.2 at 132]; Aff. Joseph Gardner ("Gardner Aff.") ¶ 8 [DE-26.2]; Boykin Dep. at 44:6, 10. In particular, after completing work on 10 June 2005, Boykin returned to his residence and placed his loaded and holstered weapon in an unlocked armoire in his bedroom. Pl.'s Ex. 6, Boykin Ltr. [DE-29.2 at 132]; Boykin Dep. 23:9-11 [DE-29.3]. Boykin and his family, excluding his eighteen year-old daughter, left that weekend for a short trip. Bozard Dep. 68: 18-22. Upon his return home Sunday night, Boykin discovered his weapon was missing and learned the following day that it had been stolen by a guest of his daughter over the weekend and subsequently traded for controlled substances. Pl.'s Ex. 6, Boykin Ltr. [DE-29.2 at 132]; Boykin Dep. 29:21-25, 30:9-10, 21-23 [DE-29.3]. Following DMV policy and procedure, Boykin reported the missing weapon to local law enforcement and to Bozard, District Supervisor at that time. Pl.'s Ex. 6, Boykin Ltr. [DE-29.2 at 132]; Boykin Dep. 22: 11-12, 31:20-21, 32:21-23 [DE-29.3]; Bozard Dep. 69:1-4.

Boykin's written warning advised that (1) pursuant to DMV policy, off duty

---

[3] As the M&R notes, in Bozard's deposition testimony, he stated he did not believe anyone recommended plaintiff's dismissal and explained that the December 15 letter was a form letter that provided a description of the severest form of punishment that could occur. In plaintiff's case, that was dismissal. (Bozard Dep. 48:4-10, 49:5-8.)

[4] Bozard clarified through deposition testimony that his authority as director was limited to documenting situations warranting disciplinary action and making recommendations accordingly. However, the final decision rested solely with the human resources division of the Department of Transportation. (Bozard Dep. 44:18-19, 45:17-21.)

[5] Bozard stated it was his responsibility to enforce the Bureau's policies and procedures and to notify appropriate personnel of possible violations. (Bozard Dep. 102:5-8.) He explained in his deposition that failure on his part to discipline plaintiff would have been a violation of his duty as deputy director. (Bozard Dep. 65:16-21, 66:1-6.)

3

DMV employees must secure firearms in a manner that prevents accessibility to children or other persons and (2) pursuant to N.C. Gen. Stat. § 14-315.1, it is a misdemeanor crime to leave a firearm in a manner that gives access to an unsupervised minor. Pl.'s Ex. 6, Boykin Ltr. [DE-29.2]. Boykin's written warning provided no information as to disciplinary action; however, Bozard testified that Boykin was ineligible for promotion or a pay raise for eighteen months.[6] Bozard Dep. 88:21-24. Boykin was issued a replacement weapon and placed on desk duty for two days; however, his pay was not affected, he was not suspended from work and no criminal charges were brought against him. Bozard Dep. 88:24-25; 89:1-3; Boykin Dep. 36:18-24, 37, 38:20-23, 40:3-8.

2. Bobby McGee

The DMV service weapon belonging to Bobby McGee ("McGee"), a white male Inspector, was stolen when his state issued vehicle was moved from his home at night by an unknown individual with access to the key. McGee's service weapon was inside the vehicle and apparently untouched. No disciplinary action was taken against McGee as no policy infractions were committed by him. Gardner Aff. ¶ 8(a) [DE-26.2].

3. William Ballentine

The state issued weapon of William Ballentine ("Ballentine"), a white male Inspector, was stolen when his vehicle was stolen from his residence. The weapon was "secured" by the locks[7] on the vehicle and there were no known DMV policy violations. The incident was treated as a criminal matter, not a personnel matter, and a police report was filed. Having committed no policy violations, Mr. Ballentine was not disciplined. Gardner Aff. ¶ 8(d) [DE-26.2].

4. Jennifer Johnson Keel

The state issued vehicle of Jennifer Keel ("Keel"), a white female emissions auditor, was stolen from her office parking area. This incident was considered a theft and not a personnel matter as it was not known that Ms. Keel violated any DMV

---

[6] As noted in the M&R, and relied upon by the magistrate judge in his findings, it is unclear whether Boykin's action was a violation of DMV policy. In affidavit testimony, Joseph Gardner ("Gardner"), DMV Deputy Director of Operations, stated "[a]t the time [of Boykin's act], DMV policy did not make it clear that a weapon kept in [an unlocked armoire in one's bedroom] was not 'secured' or that any DMV policy violations had occurred." (Gardner Aff. ¶ 8(b).) In deposition testimony, however, Boykin stated the storage of his weapon did not comply with DMV policy at the time. (Boykin Dep. 27:19-23, 28:1-4.) Boykin's testimony is consistent with his written warning, which states, "Agents shall take care to ensure that while off duty issued firearms are secured in a manner to prevent accessibility to children or other persons." (Pl.'s Ex. 6.)

[7] The M&R noted that in Bozard's written warning to Boykin, Bozard noted that the Bureau's Policy and Procedure provides that "Off duty agents may store their Bureau issued firearm in the locked trunk of there assigned vehicles." (Pl.'s Ex. 6.) Bozard emphasized in his deposition testimony that the use of the word "may" used in the policy statement was "just a recommendation." (Bozard Dep. 90:9-14.)

4

policies. This incident did not involve a firearm as Keel was not a sworn police officer and thus was never issued a service weapon. Gardner Aff. ¶ 8(c) [DE-26.2].

5. Unidentified Hispanic Male and African-American Female

In "the last few years," two License and Theft Bureau employees were disciplined for failure to secure their weapons. Gardner Aff. ¶ 9 [DE-26.2]. These employees, an Hispanic male and an African-American female, were each issued three day suspensions for failure to secure their weapons at a firing range in separate instances during official training exercises. Id. Both of these employees were supervisors at the time of their infractions.[8] Id.

(M&R 2-7.)

Plaintiff filed complaint on August 26, 2009. On July 9, 2010, defendant moved for summary judgment as to all claims. On December 23, 2010, the magistrate judge entered M&R, to which both parties have filed objections.

## DISCUSSION

A.   Standard of Review

A court should grant a summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

---

[8] Plaintiff does not rely on the treatment of the unidentified Hispanic male or African-American in support of her allegations and in fact, makes no reference thereto. Plaintiff does, however, allege that a black female, Marva Courtney ("Courtney"), was terminated for leaving her firearm inside a secured building. (Pl.'s Resp. At 12; see also Def.'s Ex. B, Pl.'s Resp. Interrog. ¶ 1 (identifying the black female as *Michelle* Courtney).)

5

587 (1986) (quoting Fed. R. Civ. P. 56(e)).

Summary judgment is not a vehicle for the court to weigh the evidence and determine the truth of the matter, but to determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. Accordingly, the court must examine the materiality and the genuineness of the alleged fact issues in ruling on this motion. Id. at 248-49.

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

B. Plaintiff's Objections

1. Plaintiff's General Objection

Plaintiff first objects generally to the M&R, contending that the magistrate judge did not follow the law with regard to the standard of review for summary judgment. Upon *de novo* review,

the court disagrees. In fact, the magistrate judge undertook a detailed review of the relevant facts in this case in favor of the nonmoving party, finding that as to the issue of disparate discipline, there was a genuine dispute as to whether plaintiff is similarly situated to an employee outside the protected class. Notably, aside from stating that the magistrate judge reviewed the facts in the light most favorable to the defendant, plaintiff's general objection does not point the court to any specific fact to which the magistrate judge improperly applied the summary judgment standard. Accordingly, the court finds that the magistrate judge applied the correct law regarding the standard of review.

2. Objection - Retaliation Claim

Plaintiff objects to the magistrate judge's recommendation to dismiss plaintiff's retaliation claim. In the complaint, plaintiff alleges that defendant rejected her for promotion and disciplined her in retaliation for engaging in protected activity. (Compl. ¶¶ IX, Count One.) Defendant sought summary judgment on all claims, yet did not include argument on the retaliation claim in its principal brief. (Def.'s Mem. Supp. Summ. J. 13.) The magistrate judge nevertheless recommends that defendant's motion for summary judgment on plaintiff's retaliation claim be allowed because of sufficient undisputed evidence in the record demonstrating the claim must fail, as well as plaintiff's failure to show that the reasons offered by defendant were a pretext for discrimination. (M&R 18-21.) Plaintiff objects to the recommendation, arguing that the magistrate judge did not allow the plaintiff an opportunity to defend her retaliation claim, and that the magistrate judge only considered defendant's evidence.

As noted above, defendant moved for summary judgment on all claims. Plaintiff's response in opposition addressed only plaintiff's claims for race and gender discrimination and disparate treatment. Yet, plaintiff was not limited to respond only to the claims discussed in defendant's

memorandum. Plaintiff's response could have addressed all claims, yet it did not. As such, the court does not agree that the magistrate judge recommended "*sua sponte*" to dismiss plaintiff's retaliation claim, since defendant moved for summary judgment on *all* claims and plaintiff was afforded an opportunity to defend her claim.[9]

Contrary to plaintiff's objection that the magistrate judge "only [took] into consideration the defendant's evidence," the magistrate judge relied on plaintiff's exhibits as well as defendant's to find sufficient evidence that the retaliation claim would fail. (Pl.s Objection M&R 3.) In finding that plaintiff did not present any evidence demonstrating that anyone involved in the decision to discipline her or to deny her promotions knew about her OHA complaint, the magistrate judge cited to the portion of Bozard's deposition submitted by plaintiff, in which Bozard testified that he could not "remember any suit involving or any action or any grievance involving [plaintiff]" but acknowledged receiving notification that he was identified as a witness in various grievance matters filed by employees. (Bozard Dep. 24:17-25.) In plaintiff's response to defendant's request for admission, she admitted that she committed conduct sanctionable by her employer. (Def.'s Ex. B, Pl.'s Resp. Req. Admis. ¶¶ 1-4.) Plaintiff's exhibits also included defendant's responses to plaintiff's interrogatories, which include defendant's rationale for not promoting plaintiff. (Def.'s Resp. Interrog. ¶¶ 1-2.)

The relevant law and analysis regarding plaintiff's retaliation claim is set forth in detail in the M&R. (M&R 18-21.) Plaintiff's objection to the M&R does not address the magistrate judge's

---

[9] The court acknowledges that the affidavit of Jack Coltrane, Deputy Director for Personnel and Administration, which the magistrate judge relied on in finding that defendant presented evidence of legitimate reasons for not promoting plaintiff, was filed as an attachment to defendant's reply. (Coltrane Aff. ¶¶ 5-9.) Plaintiff did not, however, request leave of court to file a sur-reply addressing the affidavit. Additionally, the Coltrane affidavit is not the only evidence upon which the magistrate judge based his finding.

substantive analysis of the retaliation claim, nor does plaintiff allege the existence of evidence that would rebut defendant's showing of a nondiscriminatory motive for disciplining plaintiff and not promoting her. The court has reviewed the record *de novo*, as well as the analysis set forth in the M&R, and adopts the magistrate judge's analysis. Accordingly, defendant's motion for summary judgment as to plaintiff's retaliation claim is granted.

C. Defendant's Objection - Discriminatory Discipline Claim

Defendant objects to the magistrate judge's finding that summary judgment is inappropriate as to plaintiff's discriminatory discipline claim. The magistrate judge found a genuine dispute as to whether plaintiff is similarly-situated to an employee outside the protected class. (M&R 11.) As noted in the M&R, to establish a *prima facie* case of discrimination in the enforcement of employee disciplinary measures, the plaintiff must show: (1) she is a member of a class protected by Title VII, (2) the prohibited conduct in which she engaged was comparable in seriousness to the misconduct of employees outside the protected class, and (3) the disciplinary measures enforced against her were more severe than those enforced against those other employees. Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993) (citing Moore v. City of Charlotte, 754 F.2d 1100, 1105 (4th Cir. 1985)). Once the inference of discrimination is established through the *prima facie* case, the employer must produce admissible evidence demonstrating the adverse employment action was taken "for a legitimate, non-discriminatory reason." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

As noted in the M&R, as to the first element, it is undisputed that plaintiff, an African-American woman, is a member of a protected class (M&R 12.) It is also undisputed that the third element of the *prima facie* showing has been met, that the discipline of Boykin was different from

the discipline of plaintiff in that plaintiff received a three day suspension without pay, while Boykin was not suspended, and received his normal pay. (Boykin Dep. 37:12-19.)

The magistrate judge found that a genuine issue of fact existed as to the second element, the requirement that plaintiff must show that she is similarly situated to one outside the protected class with respect to performance, qualifications, and conduct. See, e.g., Moore, 754 F.2d at 1105-06; Anglin v. Progress Energy Serv. Co., 645 F.Supp.2d 519, 526 (E.D.N.C. 2009); Holtz v. Jefferson Smurfit Corp., 408 F.Supp.2d 193, 206 (M.D.N.C. 2006). This includes the requirement that an employee must generally show the same decision maker made the disparate employment decisions. Holtz, 408 F.Supp.2d at 206. The Fourth Circuit has held that when assessing the seriousness of the misconduct, "precise equivalence in culpability between employees is not the ultimate question . . . . comparison can be made in light of the harm caused or threatened to the victim or society, and the culpability of the offender." Moore v. City of Charlotte, 754 F.2d 1100, 1107 (4th Cir. 1985). A "principled determination of 'comparable seriousness' require[s] at least initial deference to the system of offenses created by [the employer]." Id. At 1108. This inquiry assigns to lower courts the "difficult, but not unfamiliar, task of assessing the gravity of the offenses on a relative scale." Id. at 1107.

The magistrate judge, noting that plaintiff has identified Boykin as her "primary comparator," found that plaintiff and Boykin share several relevant similarities, and that defendant's exhibits in the record create a question of whether Boykin and plaintiff were similarly situated. (M&R 13-14.) Both plaintiff and Boykin were employed as inspectors of the same departmental unit at the time of their disciplinary actions. Each was disciplined by Bozard for activity related to the storage of their service weapon, and the activity occurred off duty. The differences between Boykin and plaintiff

10

involve the particular circumstances of their activity related to their service weapons, particularly, whether their actions violated DMV policy.[10] The magistrate judge found that a factual question exists between deposition testimony of Boykin and Bozard that suggests that Boykin *did* violate a DMV policy, and the affidavit of Joseph Gardner, the Deputy Director for Operations at the DMV, which states that at the time of Boykin's firearm incident, DMV policy "did not make it clear that a weapon kept in this manner was not 'secured' or that any DMV policy violations had occurred." (Gardner Aff. ¶ 8(b); M&R 13-14.)[11]

Additionally, the magistrate judge points out factual discrepancies in the record as to what policies, if any, Boykin and plaintiff violated. The magistrate judge found that plaintiff was suspended by Bozard for violation of DMV License and Theft Bureau Policy and Procedure Directive 5.01. (M&R 13.) In its objection to the M&R, defendant states that this finding is incorrect. (Def.'s Objection M&R 5, n. 3.) Defendant states that this provision only "[documents] the agency's disciplinary process and mechanisms." (Id.) Upon *de novo* review of the record, the court finds no reason to disagree with the magistrate judge's finding. The record includes documents

---

[10] Defendant argues that Boykin and plaintiff are not similar situated because "[p]laintiff failed to articulate how Boykin's attempt to secure and conceal his weapon in his private bedroom is as serious as her leaving her weapon in a restroom open to members of the public to be later found by a civilian stranger." (Def.'s Objections M&R 3.) In support of this argument, defendant cites Courtney v. North Carolina Dept. Of Transp., 2010 WL 4923344 *9 n.15 (M.D.N.C. Nov. 29, 2010). Courtney is an M&R, and is not factually similar to the present case. Courtney involved a plaintiff claiming discriminatory discipline for discipline she received after leaving her firearm unattended in a classroom. In arguing for discriminatory treatment, the plaintiff in Courtney pointed to another employee who left his gun in his police vehicle and was not disciplined. In the present case, plaintiff is not arguing that Boykin left his weapon in a vehicle, but rather that he left his weapon in an unlocked armoire in his home. (Pl.'s Ex. 6.)

[11] Notably, defendant's objection to the M&R does not address the Gardner affidavit, which the magistrate judge primarily relied on to point out the factual question that remains as to whether Boykin's conduct violated DMV policy. Gardner's statement clearly says that at the time of Boykin's discipline, "DMV policy did not make it clear" that Boykin's conduct violated policy. (Gardner Aff. ¶ 8(b).) Contrarily, Boykin testified that he violated DMV policy. (Boykin Dep. 27:19-23, 28:1-4.) Defendant does not elaborate or explain the inconsistency between these two statements. As the M&R notes, this inconsistent testimony raises a "genuine dispute" as to whether Boykin and plaintiff are comparable. (M&R 15.)

11

that state that plaintiff was suspended "[i]n accordance with NCDMV License & Theft Bureau Policy & Procedure Directive 5.01." (Def.'s Ex. A; Pl.s' Ex. 5.) Defendant argues that Boykin and plaintiff's conduct fall within "License and Theft Bureau General Order No. 45 and Policy and Procedure Directive 3.03 B(3)." (Def.'s Objections M&R 5.) While the record supports the contention that Boykin's conduct arguably violated general order 45, as is evidenced in Bozard's letter to Boykin, (Pl.'s Ex. 6), defendant cites to no evidence in the record to support the contention that plaintiff's conduct also violated this policy. Furthermore, as noted above, the record shows an inconsistency in the evidence presented by defendant as to whether Boykin's conduct even violated DMV policy. (Gardner Aff. ¶ 8(b).)

Upon *de novo* review, the court finds that the magistrate judge carefully considered and reviewed the record. Accordingly, the court adopts the findings of the magistrate judge as to plaintiff's disparate discipline claim, and finds that there is a genuine dispute as to whether plaintiff is similarly situated to an employee outside of the protected class. In particular, there is a genuine issue of fact as to whether Boykin's actions violated a policy, the scope of the policy, and whether the policy is sufficiently similar to the one violated by plaintiff. As instructed by Moore, in order to appreciate the employer's disciplinary scheme, and the gravity of Boykin's actions, the court must determine whether Boykin's actions violated DMV policy. Accordingly, defendant's motion for summary judgment as to plaintiff's disparate discipline claim is denied.

## CONCLUSION

Upon *de novo* review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court ADOPTS the findings and recommendations of the

magistrate judge in full, DENIES in part defendant's motion for summary judgment (DE # 24) as to count two of the complaint with regard to plaintiff's claim of disparate discipline, and GRANTS in part defendant's motion for summary judgment (DE # 24) as to all other claims. The parties are DIRECTED to meet and confer to develop a joint report and plan to govern disposition of the case remaining. Such report shall be filed with the court within fourteen (14) days from date of entry of this order,

SO ORDERED, this the 24th day of February, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge

13